IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE CUYAHOGA HEIGHTS LOCAL SCHOOL DISTRICT, | CASE NO.: 1:16 CV 1331 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | |
| | MEMORANDUM OPINION |
| THE NETHERLANDS INSURANCE COMPANY, et al., | |
| Defendants. | |

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. (ECF #49 and #50). For the reasons that follow, Defendants' Motion for Summary Judgment (ECF #49) is granted and the Plaintiff's Motion for Summary Judgment (ECF #50) is denied.

## FACTS

The Plaintiff, Cuyahoga Heights Local School District (the "District"), filed this action against its insurers, Defendants the Netherlands Insurance Company ("Netherlands") and Midwestern Indemnity Company ("Midwestern"), seeking satisfaction of a Judgment in the amount of $4,199,812 that the District obtained against Peter Guerrera, the former superintendent of the School District, in Case No. CV 13 818968 in the Court of Common Pleas of Cuyahoga County, Ohio. (See First Amended Supplemental Complaint, ECF #14.) The action against Superintendent Guerrera, hereinafter referred to as the Guerrera action, filed by the District on December 17, 2013, alleged that as the proximate result of the wrongful acts of Mr. Guerrera, including "negligence, negligent hiring, negligent supervision, negligent failure to implement appropriate controls, breach of duty, breach of fiduciary duty, acts, errors, omissions,

misstatements, misleading statements, or breach of administrative regulations, the District sustained a loss of over $4,000,000. (ECF #14-1, ¶ 10) Mr. Guerrera reported the Complaint to the District's insurers Netherlands and Midwestern seeking defense and indemnification.[1] By letter dated February 20, 2014, Netherlands and Midwestern declined coverage for Mr. Guerrera. (ECF #14-2) The letter explained that Mr. Guerrera was not an "insured" under the "School Leaders Errors and Omissions" (SLEO) coverage form because Mr. Guerrera was a District "employee" at all relevant times and the SLEO coverage form states that an "employee" working "within the scope of their duties," such as Superintendent Guerrera, is not an "insured" for claims made by the District against its own employee. See (ECF #47, Ex. 3)

The $4M loss referred to by the District in the Guerrera action arose from the criminal acts of the District's former Director of Information Technology Joseph Palazzo from 2007 to 2011. The Auditor of the State of Ohio issued a report on October 8, 2012, finding that Joseph Palazzo instituted an elaborate fraudulent scheme using companies owned by his brother, or other related companies as IT vendors for the District and that those companies would direct funds back to Mr. Palazzo personally. On March 27, 2013, Mr. Palazzo was charged by information with conspiracy to commit mail fraud; money laundering conspiracy; and wire fraud in the United States District Court for the Northern District of Ohio in Case No. 1:13 CR 167.

---

[1] The policies at issue are 1) Netherlands Policy No. CBP 9610962 issued to the District covering policy period July 1, 2012 to July 1, 2013 and having limits of insurance for the School Leaders Errors and Omissions Liability Coverage Part of $1,000,000 for each wrongful act and $1,000,000 in the aggregate; and 2) Midwestern Umbrella liability insurance Policy No. CU 9745557 issued to the District covering policy period from July 1, 2012 to July 1, 2013 and having limits of insurance of $6,000,000. The terms of the Midwestern Policy follow form to the School Leaders Error and Omission Coverage of the Netherlands Policy.

Mr. Palazzo pled guilty to the charges and was sentenced on July 9, 2013, to federal prison for a term of 136 months and ordered to pay restitution to the District in the amount of $3,409,662.

On January 8, 2013, the District filed an action in the Court of Common Pleas for Cuyahoga County, seeking to recover some of its losses from the wrongdoers. The defendants in that action, captioned *Cuyahoga Heights Local School District v. Joseph Palazzo, et al.*, Case No. CV 13 799017, were Mr. Palazzo and ten corporate entities and thirteen other individuals, including Mr. Guerrera. (ECF #49-1) As to Mr. Guerrera, the complaint stated that he was the District's Superintendent from 1995 through December 2010 and that the Ohio Auditor issued a finding of recovery against Mr. Guerrera and Mr. Palazzo, jointly and severally, in the amount of $1,371. (ECF #49-1, ¶27). On May 6, 2013, the District and Mr. Guerrera entered into a voluntary stipulation of dismissal of the District's claims against Mr. Guerrera without prejudice. Mr. Guerrera waived any statute of limitations defense and stipulated that any re-filed claims against him would relate back to the original filing date of January 8, 2013. (ECF #49-3) In addition, Mr. Guerrera agreed to appear for a voluntary Examination Under Oath ("EUO") to aid the District's administrative investigation to determine whether there were errors and omissions with respect to the conduct of school leaders subject to the School Leaders Errors and Omissions Liability Coverage. Mr. Guerrera's attorney notified Netherlands of these events and requested coverage for Mr. Guerrera at the EUO. On May 14, 2013, the Insurers denied coverage to Mr. Guerrera in relation to the EUO stating that the EUO did not qualify as a "claim" or "suit" that would trigger coverage under the policies. (ECF #49-2) The Insurers did not participate in the EUO.

As noted above, the District brought a separate action against Mr. Guerrera on December

17, 2013. The District's lawyer contacted Mr. Guerrera's counsel on February 27, 2014, explaining that the District did not have a personal vendetta against Mr. Guerrera but was simply seeking to maximize its recovery of the funds that were stolen from the District. To that end the District had authorized him to enter into an agreement with Mr. Guerrera whereby Mr. Guerrera would make certain admissions, and execute a Stipulated Judgment Entry, in exchange for the commitment that the District would limit its pursuit of recovery to any and all applicable insurance policies as opposed to Mr. Guerrera's personal assets. (ECF #49-2 at p.10) Thereafter, Mr. Guerrera filed an answer to the complaint, admitting all allegations except for the allegation regarding punitive damages, and declining to assert any affirmative defenses that he may have had to the District's claims. (ECF #50-5) The District and Mr. Guerrera submitted a proposed judgment entry and accompanying evidentiary materials to Common Pleas Judge Michael Russo on April 22, 2014. Judge Russo required the parties to notify the District's insurers (the Defendants here) of a final pretrial scheduled for November 14, 2014 and the trial scheduled for December 22, 2014. The Insurers declined to participate in the final pretrial or trial, reaffirming their position that there is no coverage or defense available under the District's policies as it relates to defending Mr. Guerrera since the Insurers' Named Insured (the District) had brought suit against its employee Mr. Guerrera. (ECF #53-2)

On December 22, 2014, the parties appeared before Judge Russo for trial in the Guerrera action and waived a trial by jury. The parties submitted stipulated evidence and Judge Russo confirmed that the Insurers were notified and had declined to participate. Mr. Guerrera's request to dismiss the District's request for punitive damages was granted with no objection from the District. The Court heard testimony, reviewed exhibits and considered the arguments of counsel

4

and found that Mr. Guerrera was liable to the District and Judgment was entered in favor of the District in the amount of $4,199,812. The Court further noted and approved the covenant not to execute against Mr. Guerrera and held that the covenant not to execute as well as the resolution of the action had not been the result of any collusion or fraud by the District or Mr. Guerrera. (ECF #53-1 at pp. 14-15) The Judgment was filed on December 23, 2014.

Both Plaintiff and Defendants have moved for summary judgment on the First Amended Supplemental Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues

6

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

Both Plaintiff and the Defendants agree that there are no genuine issues of material fact that would prevent entry of summary judgment and that the Court should grant one of the Parties' motions for summary judgment on the First Amended Supplemental Complaint and Defendants' counterclaims.[2] First, under the terms of the policies at issue, the District asserts that the Mr. Guerrera is entitled to coverage while the Insurers assert that he is not entitled to coverage. Even if there is coverage for Mr. Guerrera under the policies, the Insurers assert that they are entitled to summary judgment for the additional reasons that: 1) Ohio public policy prohibits the extension of insurance coverage to Mr. Guerrera in these circumstances; 2) the alleged "Judgment" in the Guerrera action is a settlement agreement that the District is not entitled to enforce against the Defendants; 3) the "consent judgment" when coupled with their covenant not to execute is not enforceable against the Defendants; and, 4) even if the "consent judgment" were enforceable against the Defendants, Ohio law provides that it would be enforceable only to the extent that Mr. Guerrera remains personally liable for the underlying judgment.

The first issue that must be addressed in a case regarding coverage under insurance policies is whether the policies on their face provide coverage for the insured under the facts and

---

[2] The Parties also assert that they are also entitled to summary judgment on Defendants' counterclaims which seek declaratory judgment to determine the rights and legal relations of the parties under the insurance policies at issue. The counterclaims raise no additional claims that will not be resolved by the summary judgment motions relative to the First Amended Supplemental Complaint. Accordingly, the Defendants' counterclaims will be resolved by a ruling on the cross motions for summary judgment.

7

circumstances at bar. In Ohio, "an insurance policy is a contract, and the parties' rights under the policy are purely contractual in nature." *Park-Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1218 (6th Cir. 1992) (*citing Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109 (1984)). "[C]ourts shall give insurance contract terms their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 826 (6th Cir. 2012) (*citing Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245 (1978)). Where terms are unambiguous, courts are not free to expand the contractual rights or obligations beyond "that originally contemplated by the parties." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 515 (2002) (quotation omitted). "It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 36 (1996).

In this case the Defendants assert that Mr. Guerrera is not an "insured" under the policies for the claims asserted against him by the District in the Guerrera action while Plaintiff contends that Mr. Guerrera is an "insured" under the policies for those claims. The policies provide in relevant part as follows:

### 1. The Netherlands Insurance Policy

The Netherlands issued a liability insurance policy (Policy #CBP 9610962) to named insured, Cuyahoga Heights Local Schools, with effective dates of July 1, 2012 to July 1, 2013. The policy included a coverage form for "School Leaders Errors and Omissions Liability" ("SLEO") which provided an "Aggregate Limit" of insurance of $1,000,000. The pertinent terms

of the SLEO form are as follows:

**SECTION II — WHO IS AN INSURED**

Each of the following is an insured:

A.  The "educational institution", and its board of governors, board of education, school committee, board of trustees, or commission.

B.  Each of the following is also an insured for acts within the scope of their duties as such:

   \*\*\*

   2.  Your "employees". However, except to the extent of coverage provided by **Section I.D. Coverage Extension — Employment-Related Practices Liability**, no "employee" is an insured for "claims" made:

      a.  By you or by a co-"employee" for "loss" arising out of and in the course of his or her employment or performing duties related to the conduct of your business;

**2. The Midwestern Policy**

Midwestern issued Commercial Umbrella Policy No. CU 9745557 to named insured, Cuyahoga Heights Local Schools, with effective dates of July 1, 2012 to July 1, 2013, providing Limits of Insurance of $6,000,000. (ECF #50-3) The terms of the Midwestern Policy follow form to the SLEO Coverage of the Netherlands Policy.

Paragraph B.2.a specifically states that no "employee is an insured for claims made by "you" ... for a loss arising out of and in the course of his or her employment or performing duties related to the conduct of your business." Under the terms of the policy, "the words 'you' and 'your' refer to the Named Insured [The District] shown in the Declarations..." Thus, under the clear terms of the policy, Mr. Guerrera is not an insured under the policy for claims made by the District arising out of and in the course of his employment or performing duties related to the

9

conduct of the District's business. The District's complaint against Mr. Guerrera states that at all times relevant to the complaint, Mr. Guerrera was employed as Superintendent of the District; that Mr. Guerrera was responsible for certain "School District duties;" and that because of wrongful acts of Guerrera in the performance of the aforesaid "School District duties" the District sustained a loss in excess of $4,000,000. (ECF #1-1 at ¶¶ 6-8).

The District asserts that the exception to "Who is an Insured" in Clause B.2.a must be "read narrowly, having in mind the presumption that coverage not clearly excluded remains available." *Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 134 Ohio Misc.2d 10, 17 (C.P. Franklin Cnty. 2005) The Ohio Supreme Court has clearly articulated that "an insurer who claims that a policy exclusion prohibits insurance coverage must show that the exclusion specifically applies" and that "[e]xclusions of coverage must be clear and unambiguous to be enforceable." *Neal-Pettit v. Lahman*, 125 Ohio St. 3d 327, 330 (2010). The District contends that in order for the exception to "Who is an Insured" to apply there must be (1) a claim made by you, *i.e.*, the District, (2) for "loss", (3) arising out of and in the course of Guerrera's employment or performing duties related to the conduct of the District's business. The District asserts that because the Insurer failed to consider all three prongs–stopping after determining that the claim was made by you (the District)–the exception does not apply.

While the February 20, 2014, declination of coverage letter signed by Senior Claims Representative Laura Tackett, recites the entire exclusion to "who is an insured" as one of the reasons for the denial of coverage, Ms. Tackett stated in her deposition that in interpreting the policy, she stopped reading after "by you" and did not consider the rest of the Clause. (Tackett Dep. at pp 58-59, ECF #50-8) Ms. Tackett did not consider whether the claim made by Mr.

10

Guerrera was for a "loss" arising out of and in the course of Guerrera's employment or performing duties related to the conduct of the District's business. (Tackett Dep. pp 58-59) Ms. Tackett's procedure in not considering the remainder of the clause was incorrect, as an exception cannot be rewritten by the insurer to limit the coverage of a policy. *See Medspace, Inc. v. Darwin Select Ins. Co.*, 13 F.Supp.3d 839, 846-847 (S.D. Ohio 2014). The District is correct that a court, in construing a policy "must give meaning to every paragraph, clause and phrase and word, omitting nothing as meaningless, or surplusage." *Affiliated FM Ins. Co., v. Owens-Corning Fiberglass Corp.*, 16 F.3d 684, 686 (6th Cir. 1994). However, in this case, applying the entire clause, does not change the clear outcome that Mr. Guerrera is not an insured for the District's complaint against him.

The District contends that its "loss" did not "arise out of" Mr. Guerrera's wrongful acts because the District's loss did not originate with the wrongful acts of Mr. Guerrera. The District's complaint against Mr. Guerrera asserts that the District's loss did not originate with the wrongful acts of Guerrera, as Guerrera did not commit, participate in or consent to any of the criminal acts set forth in the State Auditor's Report. Further, the District stated that as Mr. Guerrera did not gain profit or advantage or cause another to gain profit or advantage, and as the District had no notice of the wrongful acts of Guerrera, the District was unable to protect or mitigate against such wrongful acts. (ECF 1-1 at ¶ 9) While the District stated that its loss "did not originate" with the wrongful acts of Mr. Guerrera in paragraph 9 of the Complaint, in the preceding paragraph of the Complaint, the District asserted that "**[b]ecause of, or otherwise arising from**, the wrongful acts of Guerrera in the performance of the aforesaid School District duties, which wrongful acts include but are not limited to any and all acts, breaches of duty of

11

any kind, neglect, errors, omissions, misstatements, and/or misleading statements, the **School District has sustained a loss** of over $4,000,000, which Guerrera is legally obligated to pay to the School District." (ECF #1-1 at ¶ 8) Further, in paragraph 10 of the Complaint, the District alleged that "[a]s **a direct and proximate result of the wrongful acts of Guerrera**, including but not limited to negligence, negligent hiring, negligent supervision, negligent failure to implement appropriate controls, breach of duty, breach of fiduciary duty, acts, errors, omissions, misstatements, misleading statements, ...**the School District has sustained a loss** of over $4,000,000...." (Id. ¶ 10) Based upon a fair reading of the District's Complaint against Mr. Guerrera, it clearly asserts a loss arising from the "wrongful acts" of Mr. Guerrera. Moreover, the "wrongful acts" described by the District in the Complaint including negligent hiring, supervision, and other "School District duties" pertain to responsibilities and work undertaken in the normal course of Mr. Guerrera's employment with the District as well as being related to the conduct of the District's business. As such, the District's Complaint against Mr Guerrera asserts claims against a District employee for loss arising out of and in the course of Guerrera's employment or performing duties related to the conduct of the School District's business. Review of the Guerrera Complaint and the language of the Paragraph 2.B.a makes clear that Paragraph 2.B.a "specifically applies" in this instance. Moreover, the Court finds that Paragraph 2.B.a is clear and unambiguous. Accordingly, Paragraph 2.B.a applies and Mr. Guerrera is not an insured under the Policies for the claims asserted by the District in the Guerrera action.[3]

Having determined that Mr. Guerrera is not an insured under the Policies for the

---

[3] In light of this finding, the Court need not consider Defendants' alternative arguments in support of their motion for summary judgment.

12

District's claims in the Guerrera action, the Defendants are entitled to Summary Judgment on Plaintiff's First Amended Supplemental Complaint.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (ECF #49) is GRANTED and the Plaintiff's Motion for Summary Judgment (ECF #50) is DENIED. IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: September 21, 2018